UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAEEMAH HARDISON-HANNAH,

    Plaintiff,

                                          CASE NO. 15-12915
    v.                                       HONORABLE GEORGE CARAM STEEH

SPEEDWAY LLC,

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DOC. 18)**

On a wet, wintry morning, Plaintiff Naeemah Hardison-Hannah ("Plaintiff") slipped and fell as she walked in the door of a convenience store operated by defendant Speedway LLC. Plaintiff allegedly was seriously injured by the fall. She subsequently brought suit against Speedway in state court, asserting two claims: premises liability (Count 1) and negligence (Count 2). Speedway removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Now before the Court is Speedway's motion for summary judgment (Doc. 18). Speedway requests that the Court dismiss Plaintiff's premises-liability claim on the ground that the slippery floor was an "open and obvious condition." The Court held a hearing on the motion on August 2, 2016. For the reasons explained below, the Court will deny Speedway's motion.

-1-

I.   **Facts**[1]

Around 8 a.m. on January 6, 2015, Plaintiff drove to a Speedway gas station and convenience store. (*See* Pl.'s Dep., Doc. 18-2, at 25; Surveillance Still Frames, Doc. 18-5, at 3). Plaintiff had been to that Speedway many times previously. (Pl.'s Dep. at 24). Plaintiff parked at one of the fuel pumps and walked across the lot, toward the convenience store. (*Id.* at 26). Plaintiff, a lifelong Michigan resident, recalls that the weather was "cold," "slushy," and "wet," (*id.* at 25-26), and surveillance footage from that day shows that the Speedway lot was covered in ice or slush, (*see* Surveillance Still Frames at 4).

When Plaintiff approached the convenience store, a customer opened the door for her. (Pl.'s Dep. at 28; Surveillance Still Frames at 5). Plaintiff walked inside, and immediately slipped and fell. (Pl.'s Dep. at 32). Plaintiff explained at her deposition that she fell because "the floor was wet and the mat was not pushed up against the door. And the mat was soaked." (*Id.* at 28-29). The surveillance footage confirms that the floor mat was about ten inches or so from the door, leaving the tile floor exposed. (Surveillance Still Frames at 5-6). It is unclear, from the surveillance still frames, whether Plaintiff slipped on the floor or that mat. (*See id.*). The customer who opened the door for Plaintiff helped Plaintiff to her feet. (Pl.'s Dep. at 32). Mere seconds later, store manager Jessika Shorter "straighten[ed] out the mat" so that it was flush with the door. (Surveillance Still Frames at 7).

Plaintiff testified at her deposition that she was not looking down at the floor when she walked in the store. (Pl.'s Dep. at 29). When she fell, she noticed that the floor mat

---

[1] The following summary is based on the exhibits submitted by the parties. All facts have been construed in favor of Plaintiff, the non-moving party.

was "soaked." (*Id.* at 34). Her coat and pants became wet when she fell. (*Id.*). The store manager, Ms. Shorter, testified at her deposition that she did not remember whether there was water on the floor, although "sometime after" taking care of the other customers in the store, she went over to the door "to make sure it was no longer slippery." (Shorter Dep., Doc. 18-4, at 29-30). It was store policy to periodically "dry mop" the floor and to use a wet/dry vac to dry the floor mat. (*Id.* at 14, 17-18). Ms. Shorter testified that the floor had been dry mopped "within the hour before [Plaintiff] came in the store." (*Id.* at 28).

Plaintiff does not remember seeing any wet-floor signs as she walked in the door. (Pl.'s Dep. at 29). But a photograph taken by Ms. Shorter shows that several wet-floor signs were visible from the door, including one about two yards in front of the door, by the coffee. (Photograph of Store Entrance, Doc. 18-3; Shorter Dep. at 24).[2] Plaintiff suggested at her deposition that the stickers on the glass door might have obstructed her vision, preventing her from seeing the signs before she walked in the store. (Pl.'s Dep. at 31). The stickers only cover a small fraction of the door, however. (*See* Surveillance Still Frames at 5).

**II.    Legal Standard**

Federal Rule of Civil Procedure 56(a) empowers a court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Essentially, a court presented with a motion for summary judgment must determine "whether the evidence presents a

---

[2] The photograph was taken after the incident, but the surveillance footage confirms that the wet-floor signs were also up at the time of Plaintiff's slip and fall. (Surveillance Still Frames at 2).

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute of material fact. *Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 616 (6th Cir. 1998). In determining whether the moving party has satisfied its burden, the court must construe the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48; *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**III. Discussion**

Safeway claims that it had no legal duty to protect Plaintiff from the danger posed by the wet, slippery floor because the danger was open and obvious. Plaintiff responds that the danger was not open and obvious. Plaintiff further argues that even if the danger was open and obvious, two exceptions to the open and obvious doctrine apply. For the reasons explained below, the Court agrees with Plaintiff that there is a genuine dispute of material fact as to Safeway's legal duty. Specifically, the Court is unable to conclude that, as a matter of law, the danger posed by the wet, slippery floor was open and obvious.

**A. The Open and Obvious Doctrine.**

Under Michigan[3] law, a premises owner "owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions" on the premises. *Hoffner v. Lanctoe*, 492 Mich. 450, 460, 821 N.W.2d 88 (2012). If a premises owner breaches this duty, the owner may be held liable. *Id.*; *see also Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 610, 537 N.W.2d 185 (1995). Michigan law recognizes, however, that a premises owner's duty to invitees is not unlimited: "Perfection is neither practicable nor required . . . ." *Hoffner*, 492 Mich. at 460. Indeed, "[t]he overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on [premises owners] to make ordinary [conditions] 'foolproof.'" *Bertrand*, 449 Mich. at 616; *see also Lugo v. Ameritech Corp.*, 464 Mich. 512, 522, 629 N.W.2d 384 (2001).

One significant limit on a premises owner's duty of care to invitees is provided by the

---

[3] The events at issue in this case occurred in Michigan, and both parties have assumed that Michigan substantive law governs.

open and obvious doctrine. According to this doctrine, a premises owner "'owes no duty to protect or warn' of dangers that are open and obvious." *Hoffner*, 492 Mich. at 460-61 (quoting *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676 (1992)). A dangerous condition is open and obvious if "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* at 461. By using the term "casual," Michigan courts have limited the open-and-obvious doctrine to dangers that would be discovered by "an informal or haphazard observation or inspection." *Grandberry-Lovette v. Garascia*, 303 Mich. App. 566, 577, 844 N.W.2d 178 (2014). The open and obvious doctrine does not place a burden on invitees to "be constantly and vigilantly scanning the premises . . . for latent dangers." *Id.*; *see also Salo v. Kroger Co.*, No. 314514, 2014 WL 1321081, at *2 (Mich. Ct. App. Apr. 1, 2014) (unpublished) ("Invitees are not obligated to maintain a hyper-vigilant surveillance for subtle clues that a hazard might be lurking in the vicinity.").

As is apparent from the use of terms like "reasonable," "average person," and "ordinary intelligence," the test for whether a danger is open and obvious is an objective one. *Hoffner*, 492 Mich. at 461. But a plaintiff's observations "are entitled to as much consideration by [a] court as would be the observations of any other witness." *Bialick v. Megan Mary, Inc.*, 286 Mich. App. 359, 364 n.2, 780 N.W.2d 599 (2009). Thus, a plaintiff's subjective observations are relevant to the issue of "whether [the] hazard was observable on casual observation by an average user." *Id.*; *see also Salo,* 2014 WL 1321081, at *2.

Speedway claims that it owed Plaintiff no duty to protect her from the water on the floor, because it was an open and obvious condition. The Court disagrees. Speedway has pointed to no evidence indicating that anyone was able to see the wet conditions on the

floor by the entrance of the convenience store. The store manager testified that the area had not been dry mopped for close to an hour. Plaintiff testified that the mat was "soaked," suggesting it had not been vacuumed with the wet/dry vac for some time. Both of these facts tend to show that no Speedway employees noticed the wet, slippery conditions by the door. Plaintiff, admittedly, was not looking down when she walked in the door. But Speedway has not pointed to any evidence indicating that Plaintiff—or any other ordinary person—*would* have been able to detect the wet floor by looking down. *See Pernell v. Suburban Motors Co.*, No. 308731, 2013 WL 1748573, at *3 (Mich. Ct. App. Apr. 23, 2013) (unpublished) ("[D]efendant presented no evidence in support of its claim that, if plaintiff had looked where she was walking, she would have discovered the accumulation of liquid. . . . [W]hether a condition is open and obvious does not depend on if a plaintiff was paying attention to where she was walking; the subjective degree of care used by the plaintiff is not determinative." (citing *Lugo*, 464 Mich. at 523-24)).

Speedway also relies heavily on the fact that there were several wet-floor signs posted throughout the store, including one a couple of yards in front of the entrance. But a reasonable jury would not necessarily conclude that these signs were sufficient to place an average person on notice of the wet, slippery floor. An average person of ordinary intelligence looking at these signs might have concluded that there were wet patches *by the signs*. Such a person would not necessarily have concluded that there was water spread throughout the store or by the door.

Speedway's strongest argument is that the conditions outside were wet and icy. Courts have routinely held that wet weather is a relevant factor in determining whether a wet floor is an open and obvious danger. *See Womack v. Wal-Mart Stores, Inc.*, No.

14-12615, 2016 WL 1242438, at *2 (E.D. Mich. Mar. 30, 2016) (unpublished); *Pingel v. Speedway LLC*, No. 13-13919, 2014 WL 4054978, at *4 (E.D. Mich. Aug. 15, 2014) (unpublished); *Finazzo v. Speedway LLC*, No. 11-14770, 2012 WL 3966371, at *2 (E.D. Mich. Sept. 11, 2012) (unpublished); *Labadie v. Walmart Stores, Inc.*, No. 325636, 2016 WL 1688922, at *3 (Mich. Ct. App. Apr. 26, 2016) (unpublished); *Sharp v. Art Van Furniture, Inc.*, No. 267810, 2006 WL 2270390, at *2 (Mich. Ct. App. Aug. 8, 2006) (unpublished). Indeed, in *Sharp*, the presence of wet, wintry weather was *dispositive*. In that case, the plaintiff slipped immediately after entering the defendant's store. 2006 WL 2270390, at *1. The ground outside the store was covered in slush. *Id.* At the spot inside the store where the plaintiff slipped, "there was a minimal amount of water on the floor caused by melted snow, roughly the equivalent of a few eyedroppers full, such as would be left by the treads of shoes." *Id.* The court held that "absent special circumstances . . . . the hazards presented by ice and snow are open and obvious . . . . Reasonable minds could not disagree that a slippery surface in a store entryway should be expected under these conditions." *Id.* at *2. Essentially, the court in *Sharp* held that a wet floor at the entrance of a store on a wet day is open and obvious as a matter of law.

A more recent opinion, however, casts some doubt on the *Sharp* holding. In *Lowrey v. LMPS & LMPJ, Inc.*, No. 323049, 2015 WL 8484482 (Mich. Ct. App. Dec. 10, 2015), the court rejected the defendant's argument that the wet, slippery stairs at a bar constituted an open and obvious danger. The court criticized the defendant for relying entirely "on the fact that courts have held that steps and water—under other circumstances—amounted to open and obvious hazards." *Id.* The defendant failed to show that the danger was open and obvious because the defendant did not offer "any evidence" particular to the case. *Id.*

There was evidence that it had been snowing outside and that there was snow on the ground, but the court apparently regarded this as insufficient. *See also Shah v. Bon Ton Dep't Stores, Inc.*, No. 303135, 2011 WL 6793706, at *2 n.1 (Mich. Ct. App. Dec. 27, 2011) (unpublished); *Bialick*, 286 Mich. App. at 364 ("We reject defendant's argument that plaintiff should have been aware of a [wet, slippery] condition inside the building based solely on the 'drizzly' or 'misty' weather outside, because our focus must be on the objective nature of the condition of the premises at issue.");

Thus, the Court cannot conclude that the existence of winter weather outside made the wet floor in the Speedway convenience store open and obvious as a matter of law. The weather is certainly a relevant factor, but in the absence of *any* other evidence indicating that an average person would have been able to see that the floor was wet, it is not sufficient. Therefore, the Court finds that there is an issue of material fact as to whether the danger was open and obvious.

The cases cited by Speedway are distinguishable. In *Labadie*, 2016 WL 1688922, the Michigan Court of Appeals held that the water on the floor at the entrance of a store was open and obvious. The plaintiff had admitted at her deposition that "it was 'pouring' 'like buckets'" outside. *Id.* at *1. The court explained that "[g]iven the heavy rain, a reasonable person in plaintiff's position would have discerned that the entryway was wet and slippery upon a casual inspection." *Id.* at *3. But the court also noted that when the plaintiff slipped at the entrance of the store, she "noticed '[p]uddles' and [that] '[t]he whole foyer' as 'wet.'" *Id.* at *1 (first and third alterations in original). As the court explained, a reasonable person would have noticed such puddles on casual inspection. *Id.* at *3. The instant case is distinguishable from *Labadie* because there is no evidence that there was

-9-

any standing water or puddles at the entrance of the Speedway convenience store. Indeed, it appears that nobody noticed the wet, slippery conditions of the floor at all until Plaintiff's fall. Thus, unlike in *Labadie*, it is not at all clear that an average person of ordinary intelligence would have detected the danger.

*Pingel,* 2014 WL 4054978, and *Finazzo*, 2012 WL 3966371, are also distinguishable. In *Pingel*, there was a wet-floor sign near the coffee machine where the plaintiff slipped. 2014 WL 4054978, at *4. Similarly, in *Finazzo*, the plaintiff walked by one of the wet-floor signs and several steps later slipped and fell. 2012 WL 3966371, at *1. In the instant case, although the wet-floor signs may have been visible from the door, they were not adjacent to the door and the second customer at the door may have made it impossible to see the signs from plaintiff's vantage point. Thus, unlike in *Pingel* and *Finazzo*, the water that caused the Plaintiff to slip was not near a wet-floor sign.

Therefore, the Court cannot conclude that, as a matter of law, the wet, slippery floor was an open and obvious danger.

**IV.    Conclusion**

In sum, there is a genuine issue of material fact concerning Speedway's liability. The Court, after construing the evidence in favor of Plaintiff, is unable to conclude that a reasonable jury would find that the wet, slippery floor by the entrance of the Speedway store was open and obvious. Therefore, Speedway's motion for summary judgment (Doc. 18) is DENIED.

IT IS SO ORDERED.

Dated:  August 3, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 3, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk